## SIDNEY B. WRIGHT v. CITY OF CHATTANOOGA et al.

Eastern Section.   April 30, 1927.

Petition for Certiorari denied by Supreme Court, October 22, 1927.

1. **Pleading. Where no issue was taken or required on the pleas, they will not be noticed on appeal.**
   Where the plaintiff joined the issue on certain pleas and also filed replication to the special pleas, but at the trial no issue was taken or required, held that they would not be noticed on appeal.

2. **Municipal corporations. Contracts. Contract of city with an individual in regard to an established street grade held binding.**
   Where a party desiring to improve his property entered into a contract with the city to make certain fills and to bring certain streets to a grade determined by the city, and later sued the city because an established grade damaged his property held that by the contract he had given the city the right to prescribe a grade for the streets in question.

3. **Municipal corporations. Damages. City is entitled to set off increased benefits to property against damages done by establishing a street grade.**
   In a suit for damages caused to property by establishing a street grade, the city may set off any increased benefits resulting to the party's property by the construction of the improvements.

Appeal from Circuit Court, Hamilton County; Hon. Oscar Yarnell, Judge.

Judgment of the lower court affirmed.

W. L. Frierson and S. B. Smith, of Chattanooga, for plaintiff in error.

B. E. Tatum and J. W. Anderson, of Chattanooga, for defendant in error.

SNODGRASS, J.   This is a suit to recover $2500 as damages alleged to have been done to a certain city lot owned by the plaintiff, who is now the plaintiff in error, (but who will hereafter be simply referred to as the plaintiff) by reason of the grade and the filling on Third street, which abutted 125 feet on the north end of said lot. The suit was commenced February 8, 1923. The declaration alleges that the plaintiff owned the lot since 1915, and described it as Lot No. 5, Spring street, constituting a triangle, bounded on the north by Third street, and on the other two sides by Georgia avenue and Spring street, within the corporate limits of defendant municipal corporation; that said lot fronts about 125 feet on the south of Third street, and extends south to a point where Georgia avenue and Spring street intersect. The declaration further alleged that when plaintiff acquired said property he proceeded to improve it, by erecting houses on it; that along his Georgia avenue line he built a wall, to serve both as a retaining

wall and a foundation for the houses he intended to erect; that this wall was built up to the existing and established grade of the street, and some houses on the south end of the lot had been built on it; that houses had been built on the Spring street side, one of them being an apartment house at the corner of Spring and Third streets—the entrances of some of the apartments it is alleged being on Third street; that when these houses were built there was no established grade on this part of Third street, but that plaintiff so constructed these houses that the Third street entrances would be adjusted to the street, even if a grade should be established reasonably higher than the natural grade. It was further alleged that the north end of the lot was considerably lower than the surface of Georgia avenue and Spring street, so that basements for buildings fronting on either of said streets could be provided without much excavating; that plaintiff had plans prepared and started to erect an apartment house to stand at the corner of Georgia avenue and Third street on said lot; that his wall along Georgia avenue was to be a part of the foundation, and also the east wall of the basement; that for the north foundation and the north wall of the basement he built a wall along his Third street line; that he also built the west foundation wall, and thus lacked only the south wall of having the walls of his basement built; that the wall along the Third street line was built up to a level of the surface of Third street as it then existed, and through it a connection was made with the Third street sewer to provide drainage for the building then being erected; but that in 1921 the defendant began to fill Third street as it bounds said lot, and continued to fill it until sometime in April, 1922, changing and raising the grade about eight feet, and also raising the grade of Georgia avenue at its intersection with Third street, and some distance south thereof; that in doing this it practically destroyed the entrances to the apartment house at the corner of Spring and Third streets, tore down and covered with dirt the wall along plaintiff's north line, filled up much of his basement space, closed up and destroyed said sewer connection, and turned the surface water from Georgia avenue and forced it into the basement he was building, all to his damage, etc., etc.

To this declaration there was a plea of not guilty, and certain special pleas, the only ones necessary to be considered being those filed on February 13, 1924, which were—

"That heretofore, on or about the 2nd day of November, 1915, the defendant entered into a written contract, which is here to the court shown, by the terms of which the plaintiff, for a good, sufficient and valuable consideration, agreed to erect a retaining wall on the west side of Georgia avenue and the south side of

Third street, contiguous with plaintiff's property, of such heights as required by the City; said walls to be erected under the direction of the city authorities, and by the terms of said written contract, the plaintiff agreed to raise the grade in both Georgia avenue and Third street to such heights and levels as required by the city, thereby agreeing with the city of Chattanooga that the grade should be raised and changed and said streets, Georgia avenue and Third street filled to grades satisfactory to the city.

"Plaintiff failed to carry out some of the terms of the contract entered into with the city in that he failed to fill in the west side of Georgia avenue and Third street in accordance with his contract and undertaking for the city and for which he was fully compensated. Upon the plaintiff's failure to fill in said streets, according to his contract with the city, the defendant, City of Chattanooga, has partially filled said west side of Georgia avenue and the south side of Third street, performing the part of the work that plaintiff has agreed with the City to perform. The filling in and changing the grade in the west side of Georgia avenue and the south side of Third street, complained of in plaintiff's declaration, is the identical changing of grade and filling in of said streets that plaintiff agreed and bound himself to do and for which he received a valuable consideration. Plaintiff by his said contract has received a valuable consideration and has released the City of Chattanooga for any damages that he might suffer on account of and as a result of the changing of grade in both Third street and Georgia avenue, as complained of in his declaration."

"That the plaintiff heretofore entered into a written agreement for a valuable consideration, said agreement being here to the court shown, by the terms of which the defendant agreed to the changing of the grade in Georgia avenue and Third street, for which he complains in his declaration; and defendant says that the plaintiff by his conduct and agreement is estopped from complaining about the change of grade in said streets."

"That the plaintiff, Sidney B. Wright, on October 7, 1913 and on divers occasions before said date, and on many occasions since said date, requested and urged the defendant, the City of Chattanooga, Tennessee, to establish a grade on Georgia avenue of five and fifty-nine hundredths and to fill in Georgia avenue to said grade between Fourth and Third streets. On October 7, 1913, the plaintiff, Sidney B. Wright, agreed to pay any judgments that property owners might procure against the city by reason of the city establishing said grade and filling in Georgia avenue to said grade between Fourth and Third streets. That in compliance with the plaintiff's urgent and repeated request, the defendant, City of Chattanooga, did establish a grade of five and fifty-nine

hundredths on Georgia avenue between Fourth and Third streets, and said street has been raised in compliance with said established grade. Therefore, defendant says that the plaintiff by his conduct and requests and agreement is estopped from complaining about the change of the grade in said streets.''

The plaintiff joined issue on the pleas and also filed two replications to the special pleas, but as no issue was taken or required upon them they are not further noticed here. Shannon's Code, sec. 4650; Teasdale & Co. v. Manchester Produce Co., 104 Tenn., 267, 56 S. W., 853.

The cause was heard before the Circuit Judge without the intervention of a jury, who after a consideration of the proof dismissed the case and gave judgment against the plaintiff for costs. Motion for a new trial being overruled, plaintiff has perfected an appeal and makes the assignment of error that—

"There was no evidence to sustain the judgment that plaintiff in error was not entitled to recover.''

An examination of the record leads us to concur with the conclusions reached by the Circuit Judge. We think there is evidence to support his conclusions, and that from a consideration of all the proof the plaintiff did not show himself entitled to recover anything under his declaration.

Plaintiff seeks to have the cause determined without reference to obligations incurred by him or rights secured to the city previous to the execution of the deed by which, upon a valuable consideration, he returned to the city fourteen feet of Third street, which street he had himself been improving and grading, under a contract with the city previous to the time (1921) when the city itself began and continued the work of its improvement. He thinks this contract or deed abrogated all his obligations evidenced by the previous contract and released all rights that the city had obtained under it, and this was in effect the replication referred to as filed to the city's defense of contract immunity. Prior to the plaintiff's purchase of the triangular lot it seems he owned some property, with others, on Georgia avenue, and he and they were anxious to secure the city's co-operation in improvement. This property it seems was much below grade and required a good deal of filling. It was important to establish a grade on Georgia avenue, and he sought to have the city do this and give permission to make these fills, but questions of damage had to be considered and the City had not volunteered its essential aid, so that as early as 1913 the plaintiff made and signed the following paper called an indemnity agreement:

"This Indemnity Agreement executed this Seventh day of October, 1913, by and between the City of Chattanooga and Sidney B. Wright, witnesseth:

"That Georgia avenue north of Fourth street is —— feet below the grade of Fourth, and that the City of Chattanooga has profiled a proposal five and five-ninths per cent grade between Fourth and Third streets, requiring as a condition precedent to establishing such grade on Georgia avenue that all abutting property owners execute releases of possible damages incident to such change.

"That the owners on the east side of the proposed change have not formally acquiesced, making it expedient for the city to withhold its consent to any change.

"That pending said change of grade, A. L. Moser, owning ninety-five feet, and —— Kirkpatrick owning thirty feet,— the two owning 125 feet immediately north of Fourth street —desire a deposit of earth in front of their properties, that shall not exceed the five and five-ninths per cent tentative grade—which the city will not unconditionally permit.

"That Sydney B. Wright, owning opposite said Moser and Kirkpatrick, has joined in the request of said owners and desires permission for them to fill said street, and is willing to hold the city harmless in granting said permit.

"Now, therefore, in consideration of the premises, the said Sydney B. Wright, does hereby assume in advance and promise to pay any judgments that shall be procured by any property owners on said street between Fourth and Payne streets, whose release has not been procured for the purpose of said grade change and who shall be adjudged damages incident to the fill desired by Moser, Kirkpatrick and Wright, and now permitted by the City of Chattanooga."

Later, in 1915, the plaintiff purchased the lot, No. 5, and made some improvements on it. As will be observed this lot is narrow at the south end, being bounded thereon by the convergence of Georgia avenue and Spring street. The improvements made thereon were facing on Spring street, except, at the north end, one of the apartments had entrances facing on Third street, and plaintiff claims it also faced Georgia avenue. It is manifest that on the south end, running as it does to a point, not much of a building could be placed, to get room for which any such building would have to be removed to the south. An addition of fourteen feet off of Georgia avenue would therefore greatly increase the facilities of this lot for building purposes. There were four one-story brick buildings (negro houses) on this lot, and the plaintiff constructed them into an apartment called "Edgefield Apartments," and this

location is shown by the photograph filed as No. 1 in the evidence. At any rate it appears that after his purchase of this lot he was desirous of further improving the same. There was much difficulty in the way. The city's aid seems to have been necessary. The plaintiff, who says he built up much of that part of the city, and who seems to be an active, energetic man, no doubt impatient of the city's expedition in leading matters of private enterprise of that sort, sought again its co-operation. It was his purpose to improve his property and place an apartment at the corner of Third and Georgia avenue which place at that time seems to have been an unimproved gulch, many feet below the level of where the street should be to give it much value as a building site. But this was not so important, as gulches, sometimes taking the place of basements, are exceedingly fortunate when it is only necessary to build foundations, which also can operate as retaining walls for borrowed dirt necessary to be used in the construction or filling of raised streets to accommodate the proper grades of the street improvements of that kind. The situation was inviting of negotiations which, if successful, was fruitful of mutual benefit. Reduction of the width of streets, especially where such filling is to be had, reduces expenses. Addition of this reduction to adjacent lots add to their building facilities. So, without a complete history of what occurred before, thought it appears from Mr. Bass' testimony that it was at Mr. Wright's initiation, we find as a result of some previous negotiation there was passed an ordinance, on the 2nd day of November, 1915, section 1 providing that for the purpose of making possible the improvement of the north end of Georgia avenue without too great expense, the west fourteen feet of said street as now platted be and is hereby abandoned as a street, from the intersection of the present west curb line on Georgia avenue and extending north to the Tennessee river. Section 2 likewise abandoned, and for the same reason, the south fourteen feet of East Third street lying between Spring street and the present west line of Georgia avenue. While the said ordinance was pending the details of a proposed contract with the plaintiff, which moved its passage, was before the city board in writing, as follows: After reciting that—

"Whereas Georgia avenue from the intersection of the present curb line with Spring street north to the river is unimproved, and taken up largely by a gulch, and the same condition exists in reference to Third street between Spring street and the west curb line of Georgia avenue; and whereas the party of the second part (the plaintiff in this cause) has submitted to party of the first part (the city) in writing hereto attached; and whereas there has already been intro-

duced in the board of commissioners of the City of Chattanooga an ordinance complying with said proposition of party of the second part, and said ordinance has been passed upon two readings, it is now therefore agreed by and between the parties hereto that for and in consideration of the passage by party of the first part upon its third and final reading the aforesaid ordinance abandoning fourteen (14) feet of Georgia avenue on the west side thereof, from the intersection of the present curb line with Spring street north to the river, and fourteen (14) feet on Third street, on the south side thereof between Spring street and the west curb line of Georgia avenue, party of the second part hereby agreed and binds himself to build good and sufficient retaining walls (to be wholly within and following the line of abandonment and west of the abandoned street) and to do such filling as is more fully set forth in his proposition hereto attached.''

The proposition hereto attached was as follows:

''To the Commissioners of City of Chattanooga:

''In the matter of resolution #————, that passed two readings on October 26th, and my interest therein as shown in my letter of October 7th:—

''I would prefer personally that all abutting owners be required to do something—the same that I offer as a condition precedent to having an abandonment of fourteen feet added to their frontage, but I am confident that they will spend nothing, and this condition will cause a crooked or non-uniform street line from Spring street to the river, which would be ruinous.

''Now to safeguard the city, before the ordinance is finally passed, I hereby reaffirm my offer of October 7th, and amplifying the same offer, when the ordinance is finally passed—the effect of which will be to add fourteen feet to two sides of my triangle between Georgia avenue, Spring and Third streets out of the present gulch for reclamation and private improvement—to at once make a survey fixing the original lines and the lines of abandonment and street levels as established, using the county engineer and surveyor, with the assistance of the city engineer, if you desire, and at once proceed to erect and will maintain a stone wall laid in cement mortar of sufficient thickness, along and within the line of abandonment which shall be a part of the abandoned premises except for its retention of street fill, the wall to be up to the Georgia avenue grade of five and fifty-nine hundredths per cent, and such heighth as city may hereafter establish as a grade on Third street. I will also, as the wall progresses and dirt is pro-

curable, fill Georgia avenue on the west side to the top of the proposed wall under the direction of your street department. I will also fill on the south side of Third street connecting with Georgia avenue and Payne street against said wall, a grade fixed by direction or ordinance, leaving over Third street, and over Georgia avenue an exit for property north of Third street.''

We think upon the passage of the foregoing ordinance there was fastened upon the plaintiff all the obligations of this contract, and that there was secured to the city the right to prescribe a grade both for Third street and Georgia avenue, even above that which would be required by the five and fifty-nine hundredths per cent grade so much referred to in the case. In this agreement the plaintiff contracted—''to at once proceed to erect and will maintain a stone wall laid in Cement mortar of sufficient thickness, along and within the line of abandonment, which shall be a part of the abandoned premises except for its retention of street fill, the wall to be up to the Georgia avenue grade of five and fifty-nine hundredths, per cent *and such height as city may hereafter establish as a grade on Third street.* I will also, as the wall progresses and dirt is procurable, fill Georgia avenue on its west side to the top of the proposed wall, under the direction of your street department. I will also fill on the south side of Third street connecting with Georgia avenue and Payne street against said wall, *a grade fixed by direction or ordinance,* leaving over Third street and over Georgia avenue an exit for property north of Third street.'' The italics in this latter quotation are ours, but we think they show that the city had the right to raise the grade if it saw proper to do so, either on Georgia avenue or Third street; and, too, that this right was not dependent upon the passage of an ordinance making it exact.

We think Mr. Wright has given the effect of his last trade with the city a larger consequence than that with which it was intended to be regarded. If his replication had brought this question in issue, we do not think the evidence supports the contention that it abrogated all the previous contract rights of the city. The only change wrought in this latter agreement, or that was intended to be wrought by it, as appears from the proof, was to return to the city the fourteen feet of frontage which had been abandoned to him. We think this later determination to widen the street itself at this point was an advantage to Mr. Wright's property. The plaintiff says this fourteen feet was taken. It is true it was taken and, devoted to this service, benefited his property, but it was by agreement and upon consideration of $1163.85, the entire expense he had been put to up to that time in the

construction of the wall and in the filling of the street that had been done by him under the contract. He recognized that it was his business to construct the wall, so he proceeded to construct another, as he says upon the old line thus restored, which, as he claims, has proven insufficient. While it was not his province to determine just how high the street should be, it was his business even for his own protection and purposes, to construct the wall strong enough as a retaining wall for the strain to which it might be subjected in supporting or confining the dirt used in the filling of the street. He seems to have determined these matters upon his own motion without consultation with the city, and to accommodate his own notions as to where the grade of the street should be, and according to his own interpretation of the situation. The wall appears not to have been strong enough and will require to be reinforced and buttressed, and it is possible also that the street, being raised above the five and fifty-nine hundredths per cent grade, the walls will have to be made higher. The damages accruing in this respect appear to have been the result of his own improvidence, nor should damages, if any, which are merely the result of negligent construction, be recoverable in an action of this kind any more than in actions prosecuted for actual and incidental damages under the laws of eminent domain.

We do not think from the proof the plaintiff understood that the city could not build this grade either on Third street or Georgia avenue to a greater height than what he claims to have done. He was asked:

"Q. You did agree to put such a grade there through the block in Third street to such a height as the city might ask you to? A. Against the fourteen feet, not against the houses. I had fourteen feet to play on there, and away from my house. When the fourteen feet was taken away all my obligations with reference to that occasion, as I understood it, were relinquished.

"Q. There was not one word said in the letter you have had read from the mayor about changing the grade, was there? A. No sir.

"Q. He just relieved you of filling in Third street from your original contract? A. I don't think any ordinance has ever been passed to fix that grade.

"Q. Now it was made very plain, notwithstanding you had already filled it up to the point where you say it should not go any higher, the mayor said in his letter you will be relieved from further filling that street, you understood it would be filled further? A. I did not object to its being

filled, if it was filled uniformly. I didn't want the imposition they have now, just a twelve foot fill."

Of course he did not understand, when his deed restored the old line in the street, that the city, intending to fill the street itself to the grade it thought best, was going to leave a fourteen foot set-off in the street, and we think he understood he was to build the new wall, which he proceeded to do, though as it appears, insufficiently. We are of opinion that what the city did in raising the grade was well within its contract rights so to do, and that the plaintiff never showed any right of recovery. Upon the merits of the case the statute in any event would have allowed a set-off of increased benefits resulting to the particular property by the construction of these improvements. It appears that east of plaintiff's houses that had been put upon it, by reason of its being in a gulch and the natural grade so far beneath any desirable or accessible level, that it was practically unsalable as a building or business proposition along Third street and at its junction with Georgia avenue; that with the building of these two streets to grade, the retaining walls formed, or can be made to form, a foundation for another apartment house, with the basement ready-made. It is idle, therefore, to say that this particular lot has not received a benefit that is not common to all others in the same neighborhood. Plaintiff seeks to confine this benefit to a consideration of the situation only when the fourteen feet was turned back to the city by the plaintiff's deed and the city began to continue the fill, and insists it is proven that the property was not any more valuable, considered as of the grade to be completed, than it was when it received the deed. Manifestly this is not a proper basis for considering benefits. This improvement has not yet been fully completed, but if so the comparison should be with the condition of the lot when the plaintiff began the work of filling in the grade. Taken in this view, under all the circumstances of this case, we think it appears that the lot has been benefited more than it has been damaged.

The assignment of error is overruled and the judgment of the circuit court affirmed, with costs against appellant.

Portrum and Thompson, JJ., concur.